UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KENNI BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM H. DEWALT, et al.,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:20-CV-01562-JPB |

# **ORDER**

This matter is before the Court on William H. Dewalt, Zachary K. Day and Michael L. Mack's (collectively, "Defendants") Motion to Dismiss Kenni Brown's ("Plaintiff") Second Amended Complaint [Doc. 35]. This Court finds as follows:

## BACKGROUND

On December 18, 2017, Defendants, who are police officers with the Cobb County Police Department, conducted a traffic stop of Plaintiff. [Doc. 10].[1] According to Plaintiff, Defendants pulled him over, searched him and arrested him without probable cause. Id. at 3. More specifically, Plaintiff asserts that Defendants Dewalt and Day, who were in plain clothes conducting crime

---

[1] The facts, which are assumed true and construed in the light most favorable to Plaintiff, are derived from Plaintiff's Second Amended Complaint [Doc. 10]. Because Plaintiff is *pro se*, this Court construed Plaintiff's pleadings liberally. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

suppression activities, falsely reported to Defendant Mack, a uniformed officer, that Plaintiff failed to use his turn signal before changing lanes. Id. at 4. Even though Defendant Mack allegedly knew that Plaintiff did not commit any traffic offenses, Defendant Mack initiated a traffic stop. Id. Plaintiff asserts that Defendants lied about several different aspects of the traffic stop. First, Plaintiff alleges that he never resisted. Id. at 5. Second, he contends Defendants lied about the K-9 unit alerting to the presence of drugs. Id. Significantly, during the search of Plaintiff's vehicle, Defendants never found any drugs. Id. Third, Plaintiff asserts that Defendants lied about finding alcohol in his vehicle. Id. While Plaintiff admits that a bottle of Hennessey was in the cupholder, he claims it was empty. Id. Plaintiff alleges that Defendants lied about the presence of alcohol in the bottle because they did not find any drugs. Id. Despite these alleged fabrications, Defendant Dewalt sought an arrest warrant against Plaintiff for the following offenses: (1) obstructing/hindering a law enforcement officer; (2) open container; and (3) improper lane change/failure to signal. Id. at 4.

On January 10, 2018, Plaintiff was formally charged in the State Court of Cobb County with the misdemeanor offenses.[2] Before his criminal trial, Plaintiff

---

[2] These facts are taken from the public record of the Cobb County State Court Docket No. 18-T-1155. "A court evaluating a motion to dismiss for failure to state a claim upon which relief can be granted must focus its analysis on the face of the complaint, but it may also consider any attachments to the complaint, matters of public record, orders, and

filed a Motion to Suppress Evidence wherein he argued that the traffic stop was illegal because the police officers "failed to articulate any crime or suspicion of crime prior to the stop or during the stop." [Doc. 35-2, p. 57]. On April 9, 2018, Judge Marsha S. Lake of the State Court of Cobb County held an evidentiary hearing on the Motion to Suppress. Id. at 53. Judge Lake ultimately denied the motion after finding that Defendants Dewalt and Day observed Plaintiff fail to properly use his turn signal several times prior to changing lanes. Judge Lake thus concluded that "[t]here was reasonable articulable suspicion and probable cause for the stop." Id. at 46.

On April 23, 2018, Plaintiff filed his Motion to Reconsider Motion to Suppress. Id. at 30. Among other things, Plaintiff argued that the finding of reasonable articulable suspicion was erroneous because the evidence did not support the conclusion that the officers witnessed Plaintiff commit a traffic offense (i.e., failure to signal before changing lanes). Id. at 34. The Motion to Reconsider was denied, and Plaintiff proceeded to trial on April 27, 2018, where a jury acquitted him of all charges. Id. at 4.

---

items appearing in the record." Clark v. Bibb Cnty. Bd. of Educ., 174 F. Supp. 2d 1369, 1370 (M.D. Ga. 2001). In this case, Plaintiff presented portions of the public record with his Second Amended Complaint. The entire public record was supplied by Defendants as an attachment to their Motion to Dismiss.

On April 17, 2020, Plaintiff sued Defendants for malicious prosecution under federal and state law.³  On August 24, 2021, Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint.  [Doc. 35].  The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).  At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the

---

³ Plaintiff also brought false arrest and false imprisonment claims.  Those claims, however, were previously dismissed.  [Doc. 7].

reasonable inference that the defendant is liable for the misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Defendants moved to dismiss both the federal and state malicious prosecution claims.[4] The federal claims will be discussed first.

### 1. Federal Malicious Prosecution Claims

A plaintiff asserting a federal malicious prosecution claim must prove both: (1) a "violation of his Fourth Amendment right to be free from unreasonable seizures"; and (2) "the elements of the common law tort of malicious prosecution." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis omitted). The elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. Id.

In their Motion to Dismiss, Defendants argue that the collateral estoppel doctrine bars Plaintiff from relitigating Judge Lake's judicial determination that probable cause existed for his arrest. Defendants alternatively argue that

---

[4] Plaintiff brought three federal malicious prosecution claims and three state malicious prosecution claims, and they correspond to the misdemeanor offenses contained in the arrest warrant: (1) improper lane change; (2) obstruction; and (3) open container.

Defendant Dewalt is entitled to qualified immunity and Defendants Day and Mack are improper parties.

### a. Collateral Estoppel

Whether Plaintiff is permitted to relitigate the existence of probable cause is important because "the presence of probable cause defeats a claim of malicious prosecution." Black v. Wigington, 811 F.3d 1259, 1267 (11th Cir. 2016). Here, Defendants argue that Plaintiff is collaterally estopped from arguing that Defendants lacked probable cause because Plaintiff already raised the issue in his criminal proceeding and the issue was decided against him.

It is settled that the "rules of collateral estoppel apply to actions brought under 42 U.S.C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings." Farred v. Hicks, 915 F.2d 1530, 1533 (11th Cir. 1990) (quoting Allen v. McCurry, 449 U.S. 90, 97-98 (1980)). Federal courts considering whether to give preclusive effect to state court judgments must apply the state's law of collateral estoppel. Id. Here, to determine the preclusive effect, if any, of Judge Lake's denial of Plaintiff's Motion to Suppress, this Court must apply Georgia law.

The doctrine of collateral estoppel, also known as issue preclusion, "precludes the re-adjudication of an issue that has previously been litigated and

adjudicated on the merits in another action between the same parties or their privies." Wickliffe v. Wickliffe Co., 49 S.E.2d 153, 155 (Ga. Ct. App. 1997). "In Georgia, mutual identity of parties is required for collateral estoppel, which means that there must be an identity of parties or their privies in both actions." Minnifield v. Wells Fargo Bank, N.A., 771 S.E.2d 188, 192 (Ga. Ct. App. 2015) (recognizing that the Georgia Supreme Court has "consistently listed the mutuality of parties requirement as a necessary element"); see also Farred, 915 F.2d at 1533 (stating that "Georgia retains the old 'mutuality' rule of collateral estoppel requiring an 'identity of parties or their privies' to bar a second law suit").

In analyzing the mutuality requirement, this Court finds that Plaintiff was a party in the state criminal proceeding and is a party in the instant case. Defendants, however, were not parties to the criminal case. Thus, Defendants must show that they are privies with the State of Georgia to prevail on their collateral estoppel argument. Generally speaking,

> privies are those legally represented at trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity is found to exist, all are alike concluded and bound by the judgment.

Minnifield, 771 S.E.2d at 192 (quoting Pinkard v. Morris, 450 S.E.2d 330, 331 (Ga. Ct. App. 1994)). Significantly, "[p]rivity is not established by the mere fact

7

that the persons may happen to be interested in the same question or in proving the same state of facts." Webb v. Ethridge, 849 F.2d 546, 550 (11th Cir. 1988) (citations omitted).  Relevant here, "Georgia law does not recognize 'privity' between local police officers and the state of Georgia." Farred, 915 F.2d at 1534; see also McGuire v. Witcher, 411 S.E.2d 875, 876 (Ga. Ct. App. 1991) (holding that "Georgia does not generally allow the record in a criminal prosecution to act as a bar to a later civil action arising from the same transaction because the two actions are not between the same parties").

This Court finds that Defendants cannot satisfy the mutuality requirement for several reasons.  First, Defendants were not parties to Plaintiff's criminal proceeding.  Second, Georgia law has never recognized privity between local police officers and the state of Georgia.  Third, the Georgia Supreme Court has strictly adhered to the mutuality requirement.[5] See Jaudon v. Sasser, No. 2:17-cv-

---

[5] Defendants cite to no Georgia cases or Eleventh Circuit cases applying Georgia law which support their argument that they are privies with the state of Georgia. In their brief, Defendants only devote a short paragraph to the mutuality requirement where they state, "[w]hile Defendant Dewalt (who took out the warrant for Plaintiff's arrest) was not a 'party' per se to Plaintiff's criminal case, a law enforcement officer acts for the State in charging a criminal defendant and shares an identity of interest with the State in the subject matter of the litigation." [Doc. 35-1, p. 13].  For support of this proposition, they cite to Wood v. Kesler, 323 F.3d 872, 879 n.10 (11th Cir. 2003).  Wood, however, is inapposite as it was decided under Alabama law, which employs an "expansive definition of privity" that "includes not only a successive interest to the same property right, but also 'an identity of interest in the subject matter of the litigation.'" Hunter v. Leeds, 941 F.3d 1265, 1274 (11th Cir. 2019) (quoting Wood, 323 F.3d at 880 n.10) (alteration

118, 2020 WL 261226, at *6 n.9 (S.D. Ga. Jan. 16, 2020) (electing to conduct an independent probable cause inquiry after determining that collateral estoppel did not apply because Georgia law does not recognize privity between local police officers and the state of Georgia). Because Defendants cannot satisfy the mutuality requirement, the doctrine of collateral estoppel does not bar Plaintiff from relitigating the issue of probable cause. Thus, to the extent Defendants seek dismissal based on collateral estoppel, the motion is **DENIED**.

### b. Qualified Immunity

In their Motion to Dismiss, Defendants alternatively argue that Defendant Dewalt is entitled to qualified immunity. The defense of qualified immunity is ordinarily addressed at the summary judgment stage of a case. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). Nevertheless, the Eleventh Circuit Court of Appeals has held that it may be raised and considered on a motion to dismiss or a motion for judgment on the pleadings. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). In fact, because qualified immunity is a "defense not only from liability, but also from suit, it is important for a court to ascertain the

---

omitted). Georgia's privity definition is not nearly as expansive. See Webb v. Ethridge, 849 F.2d 546, 550 (11th Cir. 1988) (characterizing Georgia's definition of privity as "restrictive").

validity of a qualified immunity defense as early in the lawsuit as possible." Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019).

As a general principal, "[q]ualified immunity protects public officers 'from undue interference with their duties and from potentially disabling threats of liability.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)).  Indeed, qualified immunity shields government officials "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019).  Importantly, qualified immunity protects "all but the plainly incompetent." Id.

To establish qualified immunity, a defendant must first show that he was acting within the scope of his discretionary authority at the time of the alleged misconduct.  Paez, 915 F.3d at 1284.  Here, this Court finds that Defendant Dewalt was acting within the scope of his discretionary authority when he arrested Plaintiff.  See McDowell v. Gonzalez, 820 F. App'x 989, 990 (11th Cir. 2020) (recognizing that "[a] police officer generally acts within the scope of his discretionary authority when making an arrest").

Once a defendant makes the required showing, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Paez, 915 F.3d at 1284.  An arresting officer is entitled to qualified immunity unless the plaintiff can show that:  (1) the defendant violated a constitutional right; and (2) the violated right was clearly established.  Id.  Importantly, "both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case."  Rivera v. Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019).

### i. Constitutionality of the Seizure

To satisfy the first element—violation of a constitutional right—Plaintiff must establish that the legal process justifying his seizure (the arrest warrant) was constitutionally infirm and that his seizure would not otherwise be justified without legal process.  Plaintiff can make this showing if he establishes "either that the officer who applied for the warrant should have known that his application failed to establish probable cause or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant."  Williams v. Aguirre, 965 F.3d 1147, 1165 (11th Cir. 2020) (internal citations omitted).

Plaintiff does not allege that Defendant Dewalt should have known that the warrant application itself failed to establish probable cause. Rather, Plaintiff alleges that Defendant Dewalt made false statements in the warrant application. In this case, Plaintiff argues that he did not fail to use his turn signal, did not resist arrest and did not have an open container in his vehicle. While a general denial of committing a criminal offense can be conclusory, Plaintiff's allegations are plausible because he alleges additional facts to support his denial of criminal activity. Specifically, Plaintiff supported his allegations by attaching a picture purportedly showing an empty alcohol bottle and by pointing to an inconsistency in Defendants' police reports.[6]

The Eleventh Circuit has made clear that "officers may not lie about or conceal critical information." Paez, 915 F.3d at 1286. "Intentional or reckless material misstatements or omissions in a warrant affidavit thus could violate the Fourth Amendment." Id. at 1287. Because at this stage in the proceedings the Court must accept the facts as alleged in the Amended Complaint as true, this Court assumes that: (1) Plaintiff did not commit the criminal offenses; and (2)

---

[6] In Defendant Dewalt's report, he stated that Plaintiff failed to signal twice while traveling south on Cobb Parkway. [Doc. 10-1, p. 2]. In Defendant Day's report, he stated that Plaintiff failed to signal twice while traveling on Akers Mill Road. Id. at 3.

12

Defendant Dewalt made misstatements in the warrant application either intentionally or in reckless disregard for the truth.

Defendants argue that Defendant Dewalt is entitled to immunity because he had "probable cause or, at a bare minimum, arguable probable cause . . . to seek and obtain a warrant for Plaintiff's arrest." [Doc. 35-1, p. 17].  As a general rule, warrants for arrests must be supported by probable cause or they constitute an unreasonable seizure.  Paez, 915 F.3d at 1285.  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been committed." McDowell, 820 F. App'x at 991.  Pertinent to this analysis, "to receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause" to believe that a criminal offense has been committed.  Id.  Arguable probable cause means that "reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest the plaintiff."  Id.  Whether an officer possesses "probable cause or arguable probable cause depends on the elements of the crime and the surrounding facts at that moment." Id.

Citing mainly to the police reports written by the officers, Defendants argue that Defendant Dewalt is entitled to qualified immunity because he actually witnessed Plaintiff violate O.C.G.A. § 40-6-123(b)—the lane change statute—several times. [Doc. 35-1, p. 18]. Defendants further argue that Defendant Dewalt instructed Plaintiff to get out of his vehicle, but Plaintiff refused. Id. Finally, Defendants argue that they found an open container of alcohol with a very small amount of alcohol remaining in the bottle. Id. at 19. In short, Defendants contend that this establishes, at a minimum, arguable probable cause for Default Dewalt to seek a warrant for Plaintiff's arrest.

Certainly, if the police reports are true and Defendant Dewalt did witness the criminal offenses, probable cause would exist for the arrest warrant. At this time, however, this Court cannot weigh credibility and must assume that the allegations in Plaintiff's Amended Complaint are true. Given the allegations, Plaintiff has pled sufficient facts to show that Defendant Dewalt violated a constitutional right.

> ii. Clearly Established Right

To overcome qualified immunity, a plaintiff must also show that the defendant violated a constitutional right that was clearly established when the violation occurred. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would

understand that what he is doing is unlawful." Williams, 965 F.3d at 1168 (quoting Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). "A constitutional right is clearly established only if 'every reasonable official would interpret [controlling precedent] to establish the particular [right] the plaintiff seeks to apply' and 'the unlawfulness of the officer's conduct . . . follow[s] immediately from the conclusion that [the right] was firmly established.'" Id. (quoting Wesby, 138 S. Ct. at 590) (alteration in original).

Defendants contend that Plaintiff has not identified a "clearly-established law, particularized to the facts of this case, putting [Defendant Dewalt] on notice that his actions violated the constitution." [Doc. 35-1, p. 20]. This Court disagrees. In this case, Plaintiff alleges that he did not fail to use his turn signal and was pulled over for no reason at all. Moreover, Plaintiff alleges that Defendant Dewalt lied in the affidavit seeking out the warrant for Plaintiff's arrest. In fact, throughout these proceedings, Plaintiff has maintained that Defendants, including Defendant Dewalt, fabricated probable cause. For more than three decades now, the law has been clear that falsifying facts to establish probable cause is patently unconstitutional. See Williams, 965 F.3d at 1168; Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 944 (11th Cir. 2008). When Plaintiff was detained, it was clearly established law that the Constitution "prohibits a

police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." Williams, 965 F.3d at 1169.  Indeed, the Eleventh Circuit has explained that its "prohibition of intentional, material misstatements in warrant applications has long been a cornerstone of [the court's] jurisprudence on the validity of warrant-based seizures." Id.  At bottom, in light of the "uncontroverted and well-established rule," this Court readily concludes that every reasonable official would interpret the precedents to establish that intentional, material misstatements in warrant applications violate the Constitution.  See id.

Ultimately, this Court finds that Plaintiff has met his burden to show that qualified immunity is not appropriate.  First, Plaintiff's allegations are sufficient to show that Defendant Dewalt violated a constitutional right.  Second, Plaintiff's allegations are also sufficient to show that the constitutional right was clearly established.  Accordingly, to the extent Defendant Dewalt seeks qualified immunity at this stage of the proceedings, the motion is **DENIED**.

      c. Improper Parties

Defendants argue that because Defendants Day and Mack did not secure the warrant for Plaintiff's arrest, they are improper parties to the malicious prosecution claim.  In response, Plaintiff asserts that "it mattered not which officer actually

16

signed the warrant affidavit because they all collectively participated in the unlawful process before and after the legal process began." [Doc. 37, p. 6].

Liability for malicious prosecution is not limited to the officer who takes out the warrant. In fact, in the Eleventh Circuit, officials who intentionally or recklessly make misstatements or omissions necessary to support an arrest warrant can be liable for malicious prosecution even if they do not apply for an arrest warrant. Williams, 965 F.3d at 1165. In this case, Plaintiff alleges that all the defendants—not just Defendant Dewalt—fabricated evidence to generate probable cause. Under Eleventh Circuit law, these allegedly false statements are enough to establish a claim of malicious prosecution. Id. at 1167 (recognizing that "all concerned in originating and carrying on a malicious prosecution are jointly and severally responsible; it is not necessary that all should have been complainants"). In conclusion, because malicious prosecution claims are not limited to the officer who takes out the warrant, to the extent Defendants Day and Mack seek dismissal on this ground, the motion is **DENIED**.

   2. **State Malicious Prosecution Claims**

As to the state malicious prosecution claims, Defendants argue that they are entitled to official immunity. More specifically, they contend that Plaintiff cannot show the requisite malice because they acted with probable cause.

Under Georgia's doctrine of official immunity, "state public officials generally cannot be held personally liable for discretionary acts performed within the scope of their official authority." Davis v. Lang, 706 F. App'x 551, 556 (11th Cir. 2017). An exception to this general rule exists, however. "Public officials do not enjoy official immunity . . . when 'they act with actual malice or with actual intent to cause injury in the performance of their official functions.'" Id. In the context of official immunity, actual malice means "a deliberate intention to do wrong" or "the intent to cause the harm suffered by the plaintiffs." Id. (quoting Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007)). Importantly, Georgia law provides that the record may support an inference of actual malice "where there is evidence indicating that the police officer arrested the plaintiff despite having clear proof that the plaintiff did not commit the crime for which he was arrested." Id. at 557; see also Lagroon v. Lawson, 759 S.E.2d 878, 883-84 (Ga. Ct. App. 2014) (concluding that officers acted with actual malice where they coerced witnesses into giving false statements or outright fabricated witness statements and then used those statements to knowingly engage in wrongful prosecution).

Defendants argue that Plaintiff cannot show actual malice because they acted with probable cause. Again, at this stage of the proceedings, the Court is not permitted to weigh credibility. This Court cannot ignore the allegations in

Plaintiff's Amended Complaint wherein he alleges that Defendants pulled him over, searched him and arrested him despite knowing that he did not commit any crimes. Plaintiff's allegations, which include intentional fabrication of evidence, are sufficient to state a claim. Therefore, under these alleged facts, Defendants' Motion to Dismiss based on official immunity must be **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 35] is **DENIED**. The parties are **DIRECTED** to submit their Joint Preliminary Report and Discovery Plan no later than December 20, 2021. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal. In the event a Joint Preliminary Report and Discovery Plan is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

**SO ORDERED** this 29th day of November, 2021.

_____
J. P. BOULEE
United States District Judge